IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| GILBERT P. HYATT, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:14cv1300** |
| | ) | |
| UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE, *et al.*, | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

In this APA § 706(1)[1] suit, plaintiff, an engineer-inventor, seeks a declaration that the United States Patent and Trademark Office ("PTO") has unreasonably delayed final agency action on 80 of his 399 pending patent applications. The 80 patent applications that are the subject of this suit were originally filed with the PTO in the months prior to June 8, 1995. Now, twenty years later, the PTO has yet to take any final agency action granting or denying any of the 80 applications. Thus, plaintiff in this suit seeks (i) a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the PTO's action has been unreasonably delayed in violation of § 706(1) of the APA, and (ii) an injunction compelling the PTO to issue final action on his 80 patent applications. More specifically, plaintiff seeks an order (i) enjoining the PTO from reopening prosecution of his applications and (ii) compelling the PTO Appeal Board to render final decisions on these applications at a rate of at least one per month beginning three months from the date of judgment in this case.

Defendants have moved to dismiss the action for lack of subject matter jurisdiction on the ground that the APA does not authorize judicial review in these circumstances because there is,

---

[1] Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).

at this time, no administrative action that is "legally *required.*" *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 62 (2004) (emphasis in original). Alternatively, defendants argue that the claims in plaintiff's complaint are unripe for judicial review and are otherwise unfit candidates for the exercise of discretionary declaratory judgment jurisdiction. Accordingly, defendants' threshold motion presents the following questions:

> (1) Whether subject matter jurisdiction exists to decide whether examination of plaintiff's patent applications has been "unreasonably delayed" pursuant to § 706(1) of the APA;
>
> (2) Whether plaintiff's claims are ripe for judicial review; and
>
> (3) Whether plaintiff's claims warrant the discretionary exercise of declaratory judgment jurisdiction.

For the reasons that follow, defendants' motion must be denied.

I.

A brief overview of the PTO's patent examination process provides useful context for the resolution of the parties' dispute.

The PTO is responsible for "the granting and issuing of patents," which it does after conducting a thorough examination of patent applications in a process known as prosecution. 35 U.S.C. §§ 2(a)(1), 131. Prosecution begins with the submission of a patent application containing a written description of the invention to be patented, the manner and process of making and using it—called the specification—and concluding with "one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. §§ 111, 112; *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.3d 1251, 1257 (Fed. Cir. 1989) (noting that the claims "provide[] the metes and bounds of the right which the patent confers on the patentee to exclude others").

2

On receiving a patent application, the PTO is statutorily required to "cause an examination to be made of the application and the alleged new invention." 35 U.S.C. § 131. Typically, such an examination is undertaken by a patent examiner with relevant scientific or technical competence, who reviews each proposed claim in the application for novelty, support in the specification's written description, and compliance with other patentability requirements and statutes. 37 C.F.R. § 1.104(a)(1). After this initial examination, the examiner sends the applicant an "office action," which may allow or reject the patent claims. 37 C.F.R. § 1.111(a). If any claims are rejected, the applicant may respond with amendments, evidence of patentability, arguments in favor of patentability, or some combination thereof. 37 C.F.R. § 1.111(b) (stating that the applicant's reply must "specifically point[] out supposed errors in the examiner's action and must reply to every ground of objection and rejection in the prior Office action"). In the course of prosecution, the examiner may issue a Requirement or Information directing the applicant to submit "such information as may be reasonably necessary to properly examine or treat the matter." 37 C.F.R. § 1.105(a)(1). In sum, patent examination is typically a back-and-forth, iterative process resulting ultimately in the patent examiner allowing or rejecting one or more of the claims in the patent application. *See* 4 West's Fed. Admin. Prac. § 3934 ("[W]hile the normal prosecution of an application is denominated an *ex parte* proceeding, it is, in fact, a two-sided affair.").[2]

In the event that one or more of the claims in the patent application have been twice rejected by the patent examiner, the applicant may appeal to the PTO Appeal Board. 35 U.S.C. § 134; 37 C.F.R. § 41.31. To appeal, the applicant must file a notice of appeal and then an appeal

---

[2] If the examiner concludes that the applicant is entitled to a patent, the examiner will issue a Notice of Allowance giving the applicant three months in which to pay an issue fee and a publication fee. 37 C.F.R. § 1.311. Upon receiving these fees, the PTO will issue the patent. § 1.314.

brief within two months of filing the notice. 37 C.F.R. §§ 41.31(a)(1), 41.37(a). Upon the filing of an appeal brief, the patent examiner may, "within such time as may be directed by the Director," file an "examiner's answer" setting forth the grounds on which the application was rejected. 37 C.F.R. § 41.39(a). Section 1207.02 of the Manual of Patent Examination Procedure ("MPEP") recommends that a patent examiner "should furnish" this answer "within 2 months after the receipt of the [appeal] brief by the petitioner." But there is, significantly, no firm statutory or regulatory deadline for the filing of the examiner's answer. Thus, an applicant's appeal remains, in effect, in limbo unless and until the examiner files his answer. Once the answer is filed, the applicant must file a reply within two months. 37 C.F.R. § 41.41(a). Pursuant to PTO regulations, jurisdiction over the appeal does not pass to the Appeal Board until the filing of the applicant's reply brief or the expiration of time in which to file such a brief. 37 C.F.R. § 41.35(a). It is worth noting, therefore, that because there is no deadline or requirement for an examiner to file an answer, the examiner can delay or, indeed, halt the appeal process simply by failing to file an answer.

Nor is this the sole means by which the appeal process can be stopped. After an applicant has filed an appeal brief but before jurisdiction passes to the Appeal Board, either the applicant or the examiner may re-open examination and prevent the Appeal Board from gaining jurisdiction over the application. *See* 37 C.F.R. § 41.35(b).[3] In either case, the Appeal Board does not obtain jurisdiction. In the event that the examination is not reopened and the Appeal Board

---

[3] PTO regulations state that the Appeal Board's jurisdiction ends (i) when there is a "request for continued examination" pursuant to 37 C.F.R. § 1.114, (ii) if appellant reopens prosecution pursuant to 37 C.F.R. § 41.40(b), or (iii) in response to a new ground of rejection by the examiner pursuant to 37 C.F.R. § 41.50(b)(1). In addition, § 1207.04 of the MPEP states that "[t]he examiner may reopen prosecution to enter a new ground of rejection in response to appellant's brief." Plaintiff represents that he has filed a separate suit challenging the legality of examiner-reopened prosecution. *See* Pltf.'s Opposition to Deft.'s Motion to Dismiss at 5.

affirms the examiner's rejection, that decision constitutes a final agency action which the patent applicant may then appeal to the Federal Circuit or challenge in a civil action in federal district court. *See* 35 U.S.C. §§ 141(a), 145. If the Appeal Board disagrees with the rejection, it may reverse the decision or remand the application to the examiner. 37 C.F.R. § 41.50(a). Remand is not considered final agency action for purposes of appeal. 37 C.F.R. § 41.50(e).

II.[4]

Given this general description of the patent prosecution process, the facts pertinent to the pending motion may now be more readily understood. Plaintiff currently has 399 patent applications pending with the PTO, all of which were filed before June 8, 1995. Eighty of these applications are the subject of this suit. Plaintiff's patent applications, including the 80 at issue here, are far from typical in various important respects, including the number of claims asserted and the length of the patent specifications. Whereas the average patent application asserts 16 to 17 claims, each of plaintiff's 80 patent applications asserts, on average, 299 claims.[5] Deft.'s Ex. B, Requirement at 12. Furthermore, whereas the PTO typically considers an application with a specification of more than 20 pages to be a "Jumbo Application," plaintiff's applications typically include specifications of hundreds of pages in length. *Id.* at 7–8.

---

[4] Pursuant to an Order dated December 12, 2014, *Hyatt v. USPTO*, 1:14cv1300 (E.D. Va. Dec. 12, 2014) (Order) (Doc. 50), the parties jointly submitted exhibits detailing the prosecution histories of the 80 patent applications in issue here. The parties regard this information about plaintiff's patent applications to be confidential and thus the exhibits are under seal. The exhibits included a particularly helpful chart that graphically depicts the histories of the 80 patent applications which is attached, under seal, to this opinion as Attachment 1.

[5] For many applications, the PTO issued a Restriction or Election Requirement shortly after these oversized applications were filed, requiring plaintiff to limit the number of claims in the application or to elect to pursue only one group of claims. It appears that such limitations were not ultimately effective, as the patent applications later expanded beyond these limitations through subsequent amendments.

5

Although not identical, the prosecution histories of the 80 patent applications can fairly be described as essentially similar. This essentially similar history can be described as follows: First, plaintiff filed almost all of the applications in issue in mid-1995, prior to the enactment of major changes in patent law pursuant to the Uruguay Round Agreements Act.[6] The PTO then rejected plaintiff's claims in the 80 patent applications through either Final or Non-Final Agency Action. This typically occurred within a year after the filing of the applications, although in some instances this did not occur until four or more years thereafter.[7] Plaintiff responded to these rejections with requests for reconsideration or amendments that changed or added claims. For most of his applications, plaintiff received far more than the required two rejections: each application was rejected multiple times in both Non-Final and Final Agency Actions and was also the subject of Advisory Actions reiterating these rejections. Claims in most of plaintiff's 80 patent applications were rejected six or seven times and amended by plaintiff at least three times, and some more than ten times. In addition, the majority of the 80 patent applications were subjected to two or three six-month suspensions of prosecution before plaintiff finally appealed their rejection.[8]

---

[6] One application at issue in this suit was filed in 1990.

[7] In some cases plaintiff amended his claims prior to the PTO's first action. For instance, in the case of one patent application, the PTO did not issue agency action until six years after the patent application was filed, apparently because plaintiff amended the application twice within a year of its filing, adding first 35 then 88 new claims. Plaintiff amended this application once again four years later to amend 49 claims and add 228 more claims. *See* Parties' Joint Response to Court Order of Dec. 12, 2014.

[8] Plaintiff contends these suspensions were issued without a full explanation of the grounds for issuance of the suspension. Some suspension letters stated that court decisions or decisions of the Appeal Board on applications other than the 80 patent applications in issue here but relevant to the examination of the application in issue would be rendered soon, thereby necessitating suspension.

Plaintiff eventually appealed to the Appeal Board the final rejections of his claims in the 80 patent applications by filing notices of appeal and appeal briefs. This occurred in most cases between 2004 and 2007.[9] Despite plaintiff's apparent proper filing of an appeal with the Appeal Board, the examiners declined to file examiner's answers to any of plaintiff's appeals. Because the Appeal Board cannot take jurisdiction over an appeal until the filing of the examiner's answer and a response by the applicant, the 80 patent applications languished in limbo—in a state of being on appeal but with jurisdiction not passing to the Appeal Board—in most instances for five or more years. In addition, the PTO suspended prosecution of the applications for multiple periods of six months, including some pre-appeal suspensions. Throughout the course of examination, including following the filing of an appeal, each of the 80 applications in issue here was suspended at least six times, for a total time period of three or more years.

In 2013, the PTO re-opened examination of the patent applications,[10] essentially taking the applications back to square one. In reopening examination, the PTO issued a series of formal Requirements which directed plaintiff (1) to select no more than 600 total claims per "family"[11] for examination, (2) to identify the earliest applicable priority date and supporting disclosure for each claim selected, and (3) to present a copy of the pending claims in accordance with current practice. Deft.'s Ex. B, Requirement at 26–29.

---

[9] Plaintiff appealed rejections of some applications in 1997, 2000, and 2001. In some cases the examination of applications on appeal (but where the Appeal Board had not yet obtained jurisdiction) was reopened, but plaintiff's claims were again rejected and again appealed to the Appeal Board. As with the other patent applications, the Appeal Board never obtained jurisdiction for the reasons explained above.

[10] Six of the 80 applications were already under examination during the time that plaintiff had attempted to appeal the examiner's decisions on the other applications.

[11] The PTO has grouped plaintiff's patent applications into twelve "families."

Thus, the 80 patent applications in issue here have been pending before the PTO for twenty years without final agency action that could be appealed to the Court of Appeals for the Federal Circuit or a district court.[12] Plaintiff alleges that defendants' treatment of his applications has constituted, and continues to constitute, unreasonable delay under the APA. Defendants, for their part, do not dispute the delay, but attribute it to the "unprecedented" length and complexity of plaintiff's applications. Deft.'s Br. at 6. Moreover, defendants add that examination of plaintiff's 80 patent applications is rendered particularly difficult because of the interconnectedness of the applications; that is, the 80 patent applications share written descriptions with other applications and incorporate and claim the benefit of priority to earlier-filed applications, some dating back to the early 1970s. Defendants explain, therefore, that "[t]he size, volume, and interconnectedness of Plaintiff's applications [has] complicated their examination by the PTO and contributed to examination delays." *Hyatt v. USPTO*, 1:13cv1535, 2014 WL 2446176, at *1 (E.D. Va. May 29, 2014) (Hilton, J.).

III.

Section 706(1) of the APA authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Judicial review under this provision is thus limited in two ways. First, a plaintiff must allege that the action withheld or delayed is an "agency action" within the meaning of the APA. Second, this action must be

---

[12] It is worth noting that because the statutory framework has changed, this situation will not likely arise again. 35 U.S.C. § 154(b)(1)(A) now provides that the PTO provide at least one § 132 notification (i.e. notification of rejection or reexamination) not later than 14 months after the application is filed. Further, § 154(b)(1)(B) "guarantee[s]" that the examination of a patent application will be complete within three years. If it is not, the patentee is entitled to "patent term adjustment," to extend the patent term by one day for each day after the end of the three-year period until the patent is issued. These provisions were enacted pursuant to the Uruguay Round Agreements Act and do not apply to applications, like plaintiff's, filed before June 8, 1995.

8

unlawfully withheld or unreasonably delayed; that is, the action withheld or delayed must be legally required.

An understanding of the agency action requirement must begin with the APA's definition of that term as the issuance of a "rule, order, license, sanction, or relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The Supreme Court in *SUWA* elucidated the definition of agency action for purposes of a § 706(1) action. There, an environmental non-profit claimed that the Department of Interior unlawfully withheld the promulgation of rules banning off-road vehicles in Wilderness Study Areas ("WSAs"). In reaching its conclusion that there was not subject matter jurisdiction to hear this claim, the Supreme Court noted that a qualifying action under § 706(1) must be "circumscribed [and] discrete"; in other words, the agency must withhold or delay "a discrete listed action" or "a discrete equivalent" to an action listed in § 551(13). *SUWA*, 542 U.S. at 62; *see also Village of Bald Head*, 714 F.3d 186, 195 (4th Cir. 2013). In addition, the Supreme Court held that the allegedly withheld action must be *specific*, stating that "[g]eneral deficiencies in compliance" with an expansive congressional policy mandate are not enough to constitute agency action for purposes of judicial review. *SUWA*, 542 U.S. at 66. The Supreme Court went on to dispose of the *SUWA* plaintiff's claim on the second requirement: that the agency action must be "legally *required.*" *SUWA*, 542 U.S. at 62 (emphasis in original).

The second requirement for § 706(1) review—that the action plaintiff seeks to compel is legally required—means that a court cannot compel even discrete and circumscribed agency action if that action is not "demanded by law." *Id.* at 65. The Supreme Court in *SUWA* noted that the APA's requirement that the withholding or delay be "unlawful" relates to the traditional mandamus remedy, which "was normally limited to enforcement of a specific, unequivocal

command." *Id.* at 63 (internal quotation omitted).[13] Accordingly, when the decision to take a particular action is committed to the agency's discretion, a plaintiff may not seek to compel that act under § 706(1) because it is not legally required; however, when an agency is required by law to act, a court may compel the agency to act even though the *manner* of acting is left to the agency's discretion. *SUWA*, 542 U.S. at 65; *Hells Canyon Preservation Council v. U.S. Forest Service*, 593 F.3d 923, 933 (9th Cir. 2010) ("Had the Forest Service failed to establish a boundary at all, plaintiff might have a case for § 706(1) review, but we have no basis for compelling the Forest Service to adopt HCPC's preferred boundary."). In sum, a court has jurisdiction to hear a case under the APA's "unreasonable delay" provision only "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 64 (emphasis in original).

The allegations in plaintiff's complaint meet both of these § 706(1) requirements. First, with respect to § 706(1)'s agency action requirement, plaintiff's complaint, fairly read, clearly and fundamentally seeks a final, appealable PTO decision on the patentability of his 80 now twenty-year-old applications, action that is entrusted to, and statutorily required of, the PTO. *See* 35 U.S.C. § 131 (stating that the PTO Director "shall cause an examination to be made" of patent applications and, where appropriate, "shall issue a patent therefor"). Nor can there be any doubt that the PTO's issuance or denial of a patent constitutes agency action; indeed, the § 551(13) definition explicitly includes as an example the issuance or denial of a "license," which is in the nature of and analogous to a patent. Moreover, the PTO's final decision on a patent application is clearly, as *SUWA* requires, sufficiently discrete and specific to qualify as agency action

---

[13] The Supreme Court further pointed to the Attorney General's Manual on the APA, which states that § 706(1) empowers a court only to compel an agency "to perform a ministerial or non-discretionary act," or "to take action upon a matter without directing how it shall act." Attorney General's Manual on the Administrative Procedure Act 108 (1947).

reviewable under § 706(1). This conclusion is confirmed by contrasting the disposition of a patent application with the sorts of agency decisions that courts have found do *not* constitute agency actions. Thus, courts have generally dismissed § 706(1) suits for lack of jurisdiction where plaintiffs contend that an agency failed to take a particular action that plaintiffs assert would better meet a broad, unspecific policy mandate. For instance, the Supreme Court has held that the Bureau of Land Management's ("BLM") mandate to "continue to manage [WSAs] . . . in a manner so as not to impair the suitability of such areas for preservation as wilderness" was not a discrete and circumscribed agency action. *SUWA*, 542 U.S. at 65–66 (citing 43 U.S.C. § 1782(c)). Review of unreasonable delay in a case like *SUWA* would first require a court to make a substantive policy determination about what specific agency action would best serve broad congressional goals before considering whether the agency has withheld or delayed that action. But that substantive policy determination Congress entrusted to the experience and expertise of the agency, not the courts. By contrast, plaintiff here seeks to compel essentially a yes or a no from the PTO on his patent applications, a discrete task quite unlike managing public lands,[14] planning a reclamation project,[15] or implementing the Fair Housing Act.[16] In sum, it is clear that the PTO's decision to issue or deny a patent with respect to plaintiff's 80 patent

---

[14] *SUWA*, 542 U.S. at 65–66; *see also Gardner v. U.S. Bureau of Land Management*, 638 F.3d 1217 (9th Cir. 2011) (holding that Federal Land Policy and Management Act mandate to preserve wilderness and manage public lands in accordance with land use plans was not tantamount to a specific statutory command requiring agency action and thus not actionable under § 706(1)).

[15] *San Luis Unit Food Producers v. United States*, 709 F.3d 798 (9th Cir. 2013) (holding that BLM's management of reclamation project was not a discrete agency action under § 706(1)).

[16] *Sheldon v. Vilsack*, 538 F. App'x 644 (6th Cir. 2013) (holding that the Department of Agriculture's Rural Housing Service's alleged failure to implement the Fair Housing Act was not discrete agency action for purposes of § 706(1)).

applications, which plaintiff claims has been unreasonably delayed, is agency action reviewable under § 706(1).

It is equally clear that § 706(1)'s second requirement for judicial review is also present here. The unreasonably delayed agency action that plaintiff complains of is the PTO's final decision on the patentability of his 80 applications. The patent statute provides that the Director of the PTO "*shall cause an examination to be made* of the application and the alleged new invention; and if on such examination it appears that the applicant is entitled to a patent under the law, the Director *shall issue* a patent therefor." 35 U.S.C. § 131 (emphasis added). Further, if the PTO determines that the invention is unpatentable, "the Director *shall notify the applicant thereof*, stating the reasons for such rejection." § 132(a) (emphasis added); *see also* 37 C.F.R. § 1.104(c)(1). This mandatory language makes clear that the PTO is legally required to examine patent applications and ultimately to issue a patent or reject the application where warranted. Accordingly, rendering a final decision on plaintiff's 80 patent applications meets the requirements for subject matter jurisdiction under § 706(1) and defendants' motion to dismiss on this ground must be denied.

Defendants seek to avoid this conclusion by reading plaintiff's complaint to demand only a final decision by the Appeal Board, which, they argue, does not meet § 706(1)'s requirements. In this respect, defendants argue that because the Appeal Board is not vested with jurisdiction to consider plaintiff's applications until examination is completed and appeal briefs, including the examiner's answers, have been filed, the Appeal Board is not legally capable of rendering a decision, and thus cannot be legally required to render the decision plaintiff seeks. This argument fails as the complaint, fairly read, and at its core, seeks not merely an Appeal Board decision, but final action by the PTO. Furthermore, defendants' argument conveniently overlooks that the

reason the Appeal Board has been legally incapable of taking up plaintiff's applications is that for years PTO examiners failed to submit examiners' answers to plaintiff's appeal briefs and then, in 2013, re-opened examination of the applications rather than reply to the pending appeals. Defendants cannot avoid their statutory responsibility to take final agency action on patent applications—and their duty under the APA to do so within a reasonable period of time—by arguing that the Appeal Board is not legally required to render the decision plaintiff seeks when the PTO has delayed taking action that would trigger the Appeal Board's ability to consider plaintiff's claims.

Defendants further contend that there is no jurisdiction here because Congress expressly granted the PTO authority and discretion "to establish regulations governing the conduct of proceedings in the Office," including the procedures, deadlines, and requirements for the examination of applications. 35 U.S.C. § 2(b)(2)(A); *In re Bogese*, 303 F.3d 1362, 1368 (Fed. Cir. 2002). But even where the *manner* of an agency's action is left to that agency's discretion, courts may compel the agency to take discrete and legally required agency action without dictating the content of that action. *SUWA*, 542 U.S. at 65; *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008); *see also Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50 (D.D.C. 2008) (holding that where U.S. Citizenship and Immigration Services was required to adjudicate naturalization applications, it was required by the APA to do so within a reasonable time regardless of whether the Immigration and Naturalization Act specifies a timeframe for action). It is plain, therefore, that even though the *manner* of prosecuting applications—and, in typical circumstances, the pace at which they are reviewed—is left to the discretion of the PTO, because final agency action on a patent application is a discrete, legally required action, the PTO is still bound by the APA to complete the action "within a reasonable time." 5 U.S.C. § 555(b) ("With

13

due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). Just as the PTO could not put plaintiff's applications in a drawer to be ignored, it may not *unreasonably* delay taking legally required agency action on them.

Additionally, defendants caution that finding jurisdiction here would entangle the Court in the adjudication of patent applications that are now in the midst of active prosecution, pointing to the Supreme Court's admonition that the APA's jurisdictional limitations are intended to protect against judicial interference with agencies' lawful discretion. *SUWA*, 542 U.S. at 67 ("The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA."). Yet, although avoiding excessive entanglement with matters rightfully left to the agency's discretion may be a motivating principle for limiting jurisdiction to only those discrete agency actions that are legally required, avoiding entanglement is not itself the test for the existence of subject matter jurisdiction. Where an action is discrete and legally required, excessive entanglement is avoided not by declining jurisdiction, but by shaping a remedy—in the event one is warranted—that addresses an agency's obligation to act but leaving "the manner of its action" to the agency's discretion. *Id.* at 65. The Supreme Court acknowledged this in *SUWA*, citing the example of the Telecommunications Act, which required the Federal Communications Commission to establish regulations to implement interconnection requirements within six months of the enactment. This requirement, the Court reasoned, would support "a judicial decree under the APA requiring prompt *issuance* of regulations, but not a judicial decree setting forth the *content* of those regulations." *Id.* at 65 (emphasis added). In other words, there would be jurisdiction over a claim to compel the agency action but not to dictate the manner of that agency action.

Finally, defendants contend that judicial review is unwarranted at this time because plaintiff's applications are in active prosecution that will require consideration of plaintiff's recent amendments to his claims and his responses to the Requirement limiting the number of claims he may bring in each application. Although framed as a jurisdictional argument, the argument actually addresses the merits of the § 706(1) issue, namely whether the PTO's delay in processing plaintiff's applications is reasonable or unreasonable.[17] At this stage of the proceedings, whether delay is reasonable or unreasonable is irrelevant; the agency's reasonableness is a matter of the merits of plaintiff's suit, not the subject matter jurisdiction to decide it. A delay's purported reasonableness is no reason to divest a court of the jurisdiction to determine if delay was reasonable or not.[18]

In sum, plaintiff is entitled to review of defendants' allegedly unreasonable delay in concluding discrete and specific agency action which the PTO is legally required to take. In fact, it may be that the jurisdictional limitations of the APA and concerns about entanglement preclude the precise remedy plaintiff seeks, that is, an injunction against reopening examination of the 80 patent applications and a schedule for final Appeal Board decisions. Nevertheless, the APA clearly creates federal subject matter jurisdiction under § 706(1) to hear plaintiff's claim that the PTO has unreasonably delayed or withheld final agency action on his 80 now twenty-

---

[17] In their briefing and argument, defendants have emphasized the length and prolixity of the applications and the excessive number of claims, in effect suggesting that any delay in agency action concerning the applications is, for plaintiff, a self-inflicted wound. This is an argument that must be examined and addressed on the merits of the claim that there has been unreasonable delay.

[18] Defendants also point to a decision by the Court of Appeals for the D.C. Circuit to dismiss a petition for a writ of mandamus on the ground that while the agency had an "intolerable" past record of delay, it was not delaying any longer. *In re Am. Fed'n of Gov't Employees, AFL-CIO,* 790 F.2d 116, 117 (D.C. Cir. 1986). Importantly, however, it is not clear from the D.C. Circuit's opinion whether the petition was dismissed for jurisdictional reasons or on the merits.

year-old patent applications. Accordingly, defendants' motion to dismiss must be denied on this ground.

IV.

Defendants next contend that the claims in plaintiff's complaint are not ripe for judicial review. As defendants argued with respect to subject matter jurisdiction under § 706(1), they construe the complaint as seeking to compel *only* a final decision from the Appeal Board and thus argue that plaintiff's claims are unripe at least until prosecution is complete and the Appeal Board is vested with jurisdiction to consider his applications. Further, defendants contend that plaintiff's claims are not yet fit for judicial decision because the pace of the PTO's progress in examining plaintiff's applications is contingent on plaintiff's own actions in responding to the examiners' requests and orders in the course of prosecution.

It is well-settled that there is no federal subject matter jurisdiction over a matter that is unripe. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013). Courts consider two factors in determining whether a matter is ripe for judicial review: (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding judicial consideration. *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 808 (2003). It is abundantly clear that these factors demonstrate that plaintiff's complaint, properly construed, is ripe for judicial decision. As already discussed, plaintiff seeks final decisions on his applications, which have been thus far delayed by suspensions of prosecution and the PTO's failure to file examiner's answers to plaintiff's appeal briefs. The reasonableness or unreasonableness of this delay is an issue fit for judicial decision, and withholding judicial consideration of the issue would cause plaintiff hardship by potentially further delaying the final decision on his applications that this suit was brought to compel. Moreover, this is not an example of a case in

16

which plaintiff fears a future harm; plaintiff has alleged that unreasonable delay has *already* occurred and *continues* to occur. To hold, as defendants urge, that plaintiff's claim that the examination of his patent applications has been unreasonably delayed is unripe because that examination is still ongoing would render the "unreasonable delay" provision of § 706(1) completely meaningless. Indeed, far from being unripe, it appears that plaintiff's claim is, if anything, overripe. Final agency action on plaintiff's 80 patent applications has now been delayed so long—twenty years—that it seems likely that the value of plaintiff's purported inventions has been impaired. Accordingly, plaintiff's claims are ripe and defendants' motion to dismiss on this ground must be denied.

V.

Finally, defendants contend that plaintiff's claim for declaratory relief should be dismissed as there is no sound reason for the exercise of discretionary Declaratory Judgment Act jurisdiction. The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). A claim for a declaratory judgment must (i) meet the constitutional "case or controversy" requirement and also (ii) present a valid basis for subject matter jurisdiction. *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 826 (E.D. Va. 2001). As already concluded, these prerequisites are met here. The examination and disposition of patent applications is a discrete agency action required by law, and thus there is subject matter jurisdiction to determine whether this action has been unreasonably delayed. Furthermore, the action is ripe for judicial disposition, and therefore presents a constitutional case or controversy under Article III.

Even when both of these requirements are met, the district court retains discretion over whether to exercise declaratory judgment jurisdiction. *See Wilton v. Seven Falls Co.*, 515 U.S.

17

277, 282 (1995). Defendants argue that this discretion should not be exercised here because a declaratory judgment would neither (i) serve a useful purpose in clarifying or settling the parties' legal relations nor (ii) terminate or afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994), *abrogated by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), *as recognized in Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257–58 (4th Cir. 1996). At this point in the litigation, however, it is unclear whether a declaratory judgment would serve a useful purpose or terminate any controversy separate and apart from the injunctive relief that plaintiff seeks, for instance, if plaintiff could be entitled to a declaratory judgment but not an injunction. It is therefore appropriate to deny the motion to dismiss on this ground, without prejudice to the issue being raised at a later time.

VI.

For the reasons stated herein, defendants' motion to dismiss must be denied in all respects. An appropriate Order will issue.

Alexandria, Virginia
June 2, 2015

T. S. Ellis, III
United States District Judge